GORHAM (OVERTON v.). See Case No. 10,-626.

GORHAM (UNITED STATES v.). See Case No. 15,235.

## Case No. 5,627.
### GORHAM MANUF'G CO. v. WHITE.
[7 Blatchf. 513; [1] Fent. Pat. 138; 2 Whitm. Pat. Cas. 392.]

Circuit Court, S. D. New York. Sept. 15, 1870.[2]

PATENTS FOR A DESIGN — TEST OF INFRINGEMENT —RESEMBLANCE.

1. The letters patent granted to John Gorham, Gorham Thurber and Lewis Dexter, Jr., July 16th, 1861, for a design "for the handles of table-spoons and forks," are not infringed by articles constructed, in design, in accordance with letters patent granted to Le Roy S. White, January 15th, 1867, for a design for the handles of spoons and forks, or with letters patent granted to said White, March 31st, 1868, for a design for the handles of spoons and forks.
[See note at end of case.]

2. The mere fact, that the resemblance between a patented design and another design is such as to mislead ordinary purchasers and casual observers, and to induce them to mistake the latter design for the former, is not enough to make the use of the latter an infringement of the patent. The test in regard to a patent for a design, on the question of its infringement is not the eye of an ordinary observer.
[See note at end of case.]

3. The same principles which govern in determining the question of infringement in respect to a patent for an invention connected with the operation of machinery, must govern in determining the question of infringement in respect to a patent for a design.
[Cited in Hartell v. Viney, Case No. 6,158.]

4. The proper test is substantial identity, in view of the observation of a person versed in the business of designs, in the particular trade in question.
[See note at end of case.]

5. A patent for a design must be for the means of producing a certain result or appearance, and not for the result or appearance itself.
[See note at end of case.]

In equity.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Reversed in 14 Wall. (81 U. S.) 511.]

Charles M. Keller and Charles F. Blake, for plaintiffs.

George Gifford, for defendant.

BLATCHFORD, District Judge. This suit is founded on letters patent granted to John Gorham, Gorham Thurber, and Lewis Dexter, Jr., July 16th, 1861, for a design "for the handles of table-spoons and forks." The completed spoon or fork consists of a bowl or fork, a stem, and an enlarged end, the stem being interposed between the enlarged end and the bowl or fork. The stem and the enlarged end constitute the handle. The stem is gradually but slightly increased in width from about the middle of its length towards each end, the swell being more sudden where it joins the bowl or fork. At the other extremity of the stem, where the enlarged end of the handle commences, a rounded shoulder spreads out on each side. The enlarged end then gradually spreads out on each side in concave lines. These lines afterwards gradually become convex to the widest part of the enlarged end. From this point they run back and inwards, and they finally unite to form a nearly semi-circular end. Along each edge of the stem and of the enlarged end of the handle, there is a small rounded moulding, and just within this a second moulding, and at the rounded shoulders, these mouldings, which look like wires, are united by two rosettes, having somewhat the appearance produced by twisting together the ends of wires, to unite them. At the end of the enlarged end of the handle, the two sets of mouldings from each side are turned into a rosette, the two rosettes coming in contact in the middle of the width of the handle, and a small rounded tip making the central finish. Between the two inner mouldings the surface is swelled, such swell being gradually flattened from the stem towards the widest part of the enlarged end of the handle. The patent claims "the design herein specified for the handles of spoons and forks, as set forth and represented."

The bill alleges, that the defendant [George C. White], has infringed the patent by selling spoons and other articles embodying the invention covered by the patent. The infringement is denied. Some of the articles sold by the defendant have been constructed, in design, in accordance with letters patent granted to Le Roy S. White, January 15th, 1867, for a design for the handles of spoons and forks, and the rest of them have been constructed, in design, in accordance with letters patent granted to the said White, March 31st, 1868, for a design for the handles of spoons and forks.

In the patent of 1867 to White, the handle is made with a comparatively long and narrow stem or shank, and with low rounded shoulders upon its side edges, at the points where the handle begins to expand or broaden, and terminates with a small rounded projection at the extreme end. Along the edges of the front and rear side of the handle is formed a single line, following the contour of the handle, and extending down upon the head of the fork or spoon in the form of a rounded angle, such angle extending further down on the rear than on the front side of the head. Along the sides of the broader part of the handle is formed a second line, terminating at each end with an inward curve and a bead. In the space between the end curves of such second lines and the outer line, where the latter follows the outline of the rounded projection on the end of the handle, a shield is formed, having a central longitudinal rib or raised line. There is, also, on each side of the enlarged end of the handle, a short curved line, starting from the end curve of the before-mentioned second line, and uniting with such line at the broadest part of the handle.

In the patent of 1868 to White, the stem or shank portion of the handle is made with two rounded formations along its side edges, constituting a raised border, which follows the contour of the whole handle. The stem or shank portion forms its junction with the upper or expanded portion of the handle by a swell on either side, of convex shape. These swells gradually merge in concave lines, which give a narrowed configuration to the expanded portion of the handle above the swells. Further up, the boundaries are continued by convex lines, which present a wider form, and the spread out portion finally terminates in a rounded or arched projection at the extreme end. Along either side of the broader portion of the handle, within the before-mentioned raised border, is a second line, following, for the most part, the contour of the border, but terminating at each end with an inward curve and a bead. In the space between the upper end curves of the before-mentioned second lines and the raised border, where it follows the outline of the projection on the end of the handle, a shield is formed, having a central longitudinal rib or raised line. There are also short curved lines, joining the end curves of the before-mentioned second lines with the broadest part of the handle.

The question to be determined is, whether the designs of the White patents are or are not substantially the same as the design of the plaintiffs' patent. Each design may properly be considered as composed of two elements—the outline which the handle presents to the eye when its broader face is looked at, and the ornamentation on such face. If the plaintiffs' design be compared with the White design of 1867, a general resemblance is found between such outlines in the two designs. In other words, if the ornamentation on the handle in the plaintiffs' design formed no part of such design, and such design were confined to the form of the outline before-mentioned, it would be difficult to say that the plaintiffs' design and the White design of 1867 were not substantially identical. But the moment the

ornamentations on the faces of the two handles come to be considered, striking differences appear between the plaintiffs' design and the White design. In the former, the outer thread is broken at the end of the handle, at the shoulders, and at the junction of the handle with the bowl; while in the latter, such thread is continuous around the entire handle, from the junction of the stem with the bowl or fork, back to the same point, it having there the form of a Gothic arch. In the former, the outer thread is, at the shoulders, turned inward, to form rosettes, which present the appearance of two parts twisted in together; while in the latter, the outer thread is continuous. In the former, there is, on the stem of the handle, on each side, extending from the shoulder to the bowl or fork, an inner thread, parallel with and inside of the outer thread; while in the latter, there is no such inner thread. In the former, the inner threads on the enlarged end of the handle turn outwards from each other towards the end of the handle, so as to form diverging scrolls; while in the latter, such inner threads, as they approach the end of the handle, turn inwards and form re-entering scrolls. In the former, the scrolls of the inner threads form, at the end of the handle, a part of the outline boundary of the handle; while in the latter, such scrolls are entirely inside of such outline boundary. In the former, the end of the handle is formed by a tip inserted between the two diverging scrolls into which the inner threads are formed; while in the latter, the continuous outer thread forms such extreme end. In the latter, a figure in the form of a shield is inserted between the scrolls into which the inner threads are formed and the outer thread; while in the former, no such figure is found, and no place exists where it could be inserted. In the latter, there is, on each side, a third and short thread, extending from the said scroll to the widest part of the handle; while no such thread is found in the former. In the former, the inner thread on the enlarged end of the handle abuts, at the shoulder next the stem, against the scroll or rosette into which the outer thread is there formed, and looks as if it were a continuation of the outer thread on the stem, passed under the said scroll; while in the latter, the inner thread on the enlarged end of the handle is, at the shoulder, turned into a scroll or rosette, and has no appearance of being a continuation of the outer thread on the stem. In the former, the inner threads on the stem unite in a swell or boss near the bowl or fork; while no such swell or boss is found in the latter. It is, also, to be noted, that, in the former, the outline at the end of the enlarged end of the handle has the form of a portion of a trefoil, while in the latter it has the form of a Gothic arch; and that, in the former, the surface of the enlarged end between the threads is swelled between the shoulders, and such swell is gradually flattened towards the widest part of the handle, so that the swell at such part is substantially different in appear-

ance from the swell at the shoulders, while in the latter the swell is substantially the same from the shoulders to the broadest part of the enlarged end.

The differences thus observed between the plaintiffs' design and the White design of 1867, exist, also, between the plaintiffs' design and the White design of 1868. In addition, in the plaintiffs' design, the contour of the enlarged end of the handle spreads outward progressively from the shoulders until the widest part of the handle is reached; while, in the White design of 1868, the sides of the enlarged end tend inward for a distance after leaving the shoulders, and then spread outward to the widest part.

From the comparisons thus instituted, it appears, that the plaintiffs' design and the White design of 1867 are, in what has been called outline, very much alike, while they differ from each other, in a marked manner, in what has been called ornamentation; that the plaintiffs' design and the White design of 1868 differ from each other, in a marked manner, both in outline and in ornamentation; and that the two White designs differ from each other, in outline, in a marked manner, while they scarcely differ at all from each other in ornamentation.

There can be no doubt, on the proofs, that the plaintiffs' design is a very meritorious and salable one. The entire strength of their case, on the question of infringement, is put on the claimed ground, that the resemblance between their design and each of the two designs of White is such as to mislead ordinary purchasers and casual observers, and to induce them to mistake the one design for the other. It is urged, that the merit of a design appeals solely to the eye, and that, if the eye of an ordinary observer cannot distinguish between two designs, they must, in law, be regarded as substantially alike. In the present case, it is claimed, that the eye of the ordinary observer is and will be deceived, when looking at a handle of the plaintiffs' design and a handle of either of the designs of White, because, in addition to the resemblance in contour, the handles have all of them a threaded pattern around the edges, and small knobbed ornamentations at the shoulders, and small knobbed ornamentations near the end, and a pointed projection at the end, and that the general effect on the eye of the ordinary observer is not and will not be modified by the differences which have been pointed out.

It is impossible to assent to the view, that the test, in regard to a patent for a design, is the eye of an ordinary observer. The first question that would arise, if such a test were to be admitted, would be, as to what is meant by "an ordinary observer," and how he is to exercise his observation. One of the witnesses for the plaintiffs testifies, that the plaintiffs' design and the White design of 1867 are sufficiently alike to mislead ordinary purchasers as to their identity, but not on a second examination, and that, if an ordinary

purchaser did not have before him a sample of the plaintiffs' design, he would be apt to consider the White design of 1867 to be the same pattern as the plaintiffs' design. Another of the witnesses for the plaintiffs states, that he does not think that an ordinary observer would notice any difference between the two designs, on a casual observation. The expert examined for the plaintiffs testifies, that, in saying that the White designs are substantially identical with the plaintiffs' design, he means such an identity as would deceive him, when going, as a purchaser, to ask for one spoon and being shown another, and that, when he saw articles of the plaintiffs' design and of the White design of 1867 separately, he took them to be of the same design, until he laid them side by side and compared them minutely.

The same principles which govern in determining the question of infringement in respect to a patent for an invention connected with the operation of machinery, must govern in determining the question of infringement in respect to a patent for 'a design. A design for a configuration of an article of manufacture is embraced within the statute, as a patentable design, as well as a design for an ornament to be placed on an article of manufacture. The object of the former may solely be increased utility, while the object of the latter may solely be increased gratification to a cultivated taste, addressed through the eye. It would be as reasonable to say, that equal utility should be the test of infringement in the first case, as to say that equal appreciation by the eye should be the test of infringement in the latter case. There must be a uniform test, and that test can only be, as in the case of a patent in respect to machinery, substantial identity, not in view of the observation of a person whose observation is worthless, because it is casual, heedless and unintelligent, and who sees one of the articles in question at one time and place, and the other of such articles at another time and place, but in view of the observation of a person versed in the business of designs in the particular trade in question—of a person engaged in the manufacture or sale of articles containing such designs—of a person accustomed to compare such designs one with another, and who sees and examines the articles containing them, side by side. The question is not, whether one design will be mistaken for another by a person who examines the two so carelessly as to be sure to be deceived, but whether the two designs can be said to be substantially the same, when examined intelligently, side by side. There must be such a comparison of the features which make up the two designs. As against an existing patented design, a patent for another design cannot be withheld because, to a casual observer, the general appearance of the later design is so like that of the earlier one as to lead him, without proper attention, to mistake the one for the other. The same test must be applied on the question of infringement.

Applying these principles to the evidence in this case, and comparing the designs of White with the plaintiffs' design, it is satisfactorily shown, by the clear weight of testimony, that the designs of White are not substantially the same as the plaintiffs' design. The strength of the testimony of the witnesses on the part of the plaintiffs themselves, leads to this conclusion. The substance of the evidence of the most intelligent of them, persons in the trade, is merely to the effect, that the White designs are not substantially the same as the plaintiffs' design, but were intended to appear to be the same to an ordinary purchaser, and will so appear to him, but that a person in the trade will not be deceived, by the resemblance, into purchasing an article of the one design for an article of the others.

A patent for a design, like a patent for an improvement in machinery, must be for the means of producing a certain result or appearance, and not for the result or appearance itself. The plaintiffs' patent is for their described means of producing a certain appearance in the completed handle. Even if the same appearance is produced by another design, if the means used in such other design to produce the appearance are substantially different from the means used in the prior patented design to produce such appearance, the later design is not an infringement of the patented one. It is quite clear, on a consideration of the points of difference, before enumerated, between the plaintiffs' design and the designs of White, that each of the latter is substantially different from the former, in the means it employs to produce the appearance it presents. Such is the undoubted weight of the evidence, and such is the judgment of the court. The bill must be dismissed, with costs.

[NOTE. From this decree the Gorham Company appealed to the supreme court, where, in an opinion by Mr. Justice Strong, the decree was reversed. 14 Wall. (81 U. S.) 511. Justices Field, Miller, and Bradley dissented. The question as to what constitutes identity of design was fully considered with the aid of the testimony of the experts, and the application of the language of the patent acts of August 29, 1842 (5 Stat. 543), and of March 2, 1861 (12 Stat. 246).

[The mode in which the appearance of a design is produced was held to have very little to do with the salability of it. The appearance itself is the test of popularity. The patent here was for the product, and not for the elements entering into it. It is the effect upon the eye which gives such an article value. Sameness of appearance is the true test of identity of design.]